Good afternoon, this is 417-0556. People v. Dorsey. I'll show the appearance of Mr. Waller for the FL and Mr. Londrigan for the FLE. Mr. Waller, you may proceed. Thank you. May it please the Court, Mr. Counsel. My name is James Waller. I work for the State Appellate Defender's Office. I represent Jamari Dorsey. And the Court's indulgence, I'd like to briefly speak to all three arguments we raised in our briefs. First, the Jamari Dorsey statements about the cocaine belonging to him should have been suppressed as they were obtained in violation of his right to remain silent. Second, that the State failed to prove any of the key elements for possession of a controlled substance for the house of Beale Park. And third, that the Defense Counsel is ineffective for failing to object to the invisibility of evidence that no foundation or chain of evidence exists. On the first issue, Jamari's statements should have been suppressed. They were obtained in violation of his right to remain silent and were involuntary. Sitting handcuffed in the back of a police van, Jamari Dorsey was randized and questioned by officers. He tells them he regularly uses cannabis. When they ask him about other drugs in the house, they tell him that they found cocaine in the house. He says, I don't think I'm going to talk to you anymore. A moment later, the officers ask him about the cocaine. Excuse me. They ask him if it belonged to him or his girlfriend. Jamari says it all belongs to him. In response to further questioning, Jamari says that he wants to have an attorney present. Only then do the officers terminate the interview. Now, in hearing a motion to suppress, the state's burden proved voluntary in nature. The statement's made and it's still in the interview, of course. The trial court's analysis of the suppressibility of his comments after, I don't think I want to speak to you anymore, ended with the words, I don't think, calling that equivocal because he didn't say, I don't want to talk to you anymore. That is a good test. Just because the court will phrase something differently does not mean that the statement is equivocal. If you go into McDonald's and order a Big Mac and say, I don't think I want any lettuce on it, and they gave you a Big Mac with lettuce and said, well, you didn't sound sure, that would not be a reasonable response. I don't think I want to talk with you. It's colloquial. It's non-confrontational. It's important when you can't come to that conclusion. Is it unequivocal? I'm sorry? Is it unequivocal? It's not unequivocal. Reviewed courts have said that the recognized language less strong than no can be used to represent us right to remain silent. That's why we have to look at the factual context of the utterance and their moment, not just the words. It's not a situation where certain magic words will terminate an interview and others won't. This court takes a de novo review of the factual context to determine whether it can indicate an intent not to answer any more questions. The briefs compare the exact words Jamari used with the words defendants used in other cases. And I won't take up the time to go through every case. But the key takeaway of all those cases is that where the statement was held to be equivocal, the facts of the case and the emotion and reality of the person making the statement were analyzed and found that the defendant was not stating an intent to terminate the interview. Jamari Dorsey stated that intent to not answer any more questions. That statement was ignored. Any response to a follow-up question should have been suppressed. On the second argument, there was insufficient evidence that he manufactured and delivered heroin, period, or possessed heroin at all. That he did so within a thousand feet of Weaver Park, or that Weaver Park was even a public park, as contemplated by the statute. This was, frankly, a sloppy prosecution that failed to introduce evidence to satisfy the necessary elements of the case. Jamari never admits to possessing heroin. The only evidence presented in the trial that goes to that issue is that an officer found a tan-colored substance he believed to be heroin. Then a scientist tests something that confirms it to be heroin, but no evidence is given that what she tested was what was found in the substance. Then an officer testifies in court to three exhibits that contained a tan-brown substance that he believes to be heroin. But he also doesn't testify that those were the substances found in the house or show any markings or labels upon which he could base that knowledge. Well, counsel, let me go back for a moment. The testimony presented at the hearing on the motion to suppress focused on statements where the defendant said, I don't think I want to talk anymore to Deputy Beckett. And the trial court, at concluding that hearing, decided that that was not a sufficient, unequivocal invocation of his right to remain silent and denied the motion to suppress. At trial, did Deputy Beckett testify to the same testimony that she offered at the hearing on the motion to suppress? I'm sorry, Your Honor, I just don't remember. I don't remember exactly what the officer's testimony was at trial. No, not what? I'm sorry? I didn't hear what you said in the last part. I said I'd be having a supplement on that issue later, but I just don't remember how exactly the officer testified at trial to the crime of the motion to suppress. Well, I think there was testimony presented about that and also testimony presented at trial when the state's attorney questioning Deputy Beckett said, Mr. Dorsey stated that he wanted to talk, speak with an attorney. He didn't want to speak with you anymore, correct? And the answer was correct. No one seems to have said anything about this, but why isn't that improper testimony? Why isn't eliciting in front of the jury that the defendant said, one, I don't want to talk to anyone anymore, two, that at some point he said he wanted to speak to a lawyer, is improper? Well, I mean, that would be, that should be an issue on its own. Unfortunately, I believe it's being fully preserved, obviously, so it doesn't object to that as well. You haven't raised it as an issue on appeal. I'm sorry, Your Honor? You didn't raise, in other words, leaving aside the ruling on the motion to suppress, let's assume the trial court decides this is going to come in. Then what's important is what the defendant said, namely, and the question seems to me at trial would then be, I asked the defendant whether the cocaine found in the residence was his or Wade's, and he responded that it was his. The whole business about, and then he asked for an attorney, is improper, and also the business before then is, I don't think I want to talk to you anymore. The court deemed that to be not sufficiently unequivocal, but the point is that none of this is proper for the jury to hear, is it? I agree. I believe, if anything, that's maybe some more supplementary evidence as to my argument regarding how much defense counsel is paying attention and the effectiveness of this counsel. Well, it's even worse in checking out the transcript. It's like the cop understood. The cops understood that, you know, they don't want to volunteer this, so it was all brought out on leading questions by the prosecutor. And I believe that's the way the, I believe that attention to detail and the way that prosecution is handled goes throughout the whole case. Again, I don't believe defense counsel was paying attention. He makes as much on the record at the post-trial motion. If I made an error, I made an error regarding all the cops with chain. I believe that likely happened regarding those questions as well. So you would agree that there's no question, but an invocation of your right to remain silent, even if it might not be perfect, is not admissible evidence, nor is defendants saying, I want to talk to a lawyer, admissible. I would agree. Okay, go ahead. The only evidence tied into any possession of a controlled substance were those statements regarding the cocaine, which are suppressible. They don't even have those statements to rely on regarding heroin. On the distance element, the sum total of the state's evidence that any possession of heroin took place within 1,000 feet of a public park was provided by Detective Quinley. When asked how he determined the proximity of the residence to Weaver Park, excuse me, Detective Quinley said, through Google Maps, we'll do it. The defense counsel objected to that sheer say. It was overruled. Detective Quinley then indicated that he guesstimated about 300 feet from the center of the residence to Weaver Park. He doesn't testify about any particular training he received in my involvement instances, any initial reliability of that guesstimation, or any way to calibrate that. This cannot be sufficient as a matter of law. This isn't the type of general neighborhood knowledge that courts have found to be sufficient in officer testimony to demonstrate that, say, a building is regularly used for a church or that these actions took place in a certain county. This is a scientific measurement that must be proven beyond a reasonable doubt to enhance a crime to a class-S, non-probationable, mandatory minimum six years in prison. You don't get to just guesstimate away six years of somebody's life. Finally, what does it mean to guesstimate? Well, I mean, it's a colloquial term. I assume that the officer estimated it. He took a guesstimate. Is it a definition? I mean, I have to say I've never looked up the word until just recently in preparation for the case. Merriam-Webster defines it as an estimate usually made without adequate information. It's not a particularly reassuring definition, is it? I agree. And frankly, I'm surprised that there was even a dictionary definition. I don't think I've ever heard it colloquially and taken from the same type of lack of foundation of the college. There's no information provided in the jury to indicate what a neighborhood park even is. Nobody testified about basketball hoops or picnic tables or any other indication of a public park. Nobody even summarily testified that it is a public park. They just said a neighborhood park. Could the court take judicial notice of that? If somebody asked the court to, if the court indicated that was the basis. I lived in Champaign for three years and lost count of where a neighborhood park is. Champaign has so many tiny little one-block traffic islands and parks that I don't think you're ever going to notice whether something is a park or a neighborhood park. But it would have taken one question from a prosecutor, one or two sentences for an officer to give some foundation for that. So that we know that it's not a housing complex or a pizza center. You mean the same prosecutor asked the leading questions bringing out the invocation of Miranda and wanting to talk to an attorney, failed to follow up and ask a foundational stuff? Failed to establish a chain of evidence. Who can figure that? I have the same response. And this is why I call it sloppy prosecution for how to throw the case here. Like the distance, the fact that it is a public park must be proved beyond a reasonable doubt for class X enhancement. There's zero evidence provided, so the conviction really must be vacated. The alternative if the court finds there's sufficient evidence that he possessed heroin at all, and I don't know what the basis of that would necessarily be, because the heroin, when I examine the testimony, was found in common areas of that home. This court should knock down the conviction of possession of heroin. Well, they found some evidence that he lived there, right? That's right. With Ms. Wade. And Ms. Wade said it's not mine. I don't know that she actually testified to that. But I will agree that nobody testified that it was theirs. Well, the statement of the defendant was appropriate. Why don't we have enough evidence? His statement was cocaine was his. He's never asked for heroin, or at least when he was, he didn't ask for any at that point. There's no statement that he possessed heroin. All we know is that, again, there was a tan-colored substance found in the home. Later on, somebody did the test and found something to be heroin. And then somebody in court thought something was heroin. That's the only thing that ties them together. But, again, if there is proof of possession of heroin, it should just be knocked down from the Class X. Finally, defense counsel will, it's ineffective for failing to object. From a Class X to what? Well, I mean, at least in Class I, if you find that there's evidence sufficient to show, I argue that it's not. There's nothing tying heroin to him beyond any kind of constructive, to his constructive possession. The problems with chain of custody go both ways here. There's certainly no reliable evidence that was tested. You have made an argument that there was no possession. I understand that. You haven't incorporated into that argument that even if there was possession, there was no intent to deliver, have you? I have not, because I understand the State's argument in their brief regarding other things that were found at the scene. Okay. So I'm not necessarily contesting that. I don't think there's any proof that any of those things belong there. But if, but I don't know. I'm not arguing that. I don't know. Obviously, we touched on the chain issue so much a moment ago. But the chain of evidence demonstrating that any substance recovered at all ever tested positive for a legal substance is just as unestablished by the sloppy prosecution. Based on the testimony and procedures used here, we're sloppy from the get-go. We have Officer Shrestha collecting things they found, believed to be drugs, putting those packages together. Then they get transported to some police department. We don't even know which police department they get to. Who then goes through it all, bags them, seals them, does some field tests. Again, he's not the one that found it in any particular location. Then the next thing we know, some substances appear at the crime test lab in Chicago. We don't know how they got there, how a particular exhibit tested in Chicago was tracked back to a particular room that it was found in, etc. Defense counsel did nothing to challenge the foundation of the State's testimony and chain. Usually when we get a case like this, it's impossible to tell if defense counsel just didn't want to floor the jury, get any markings of transportation, or if he just missed it and was negligent. In this case, we do. At the post-trial motion hearing, the trial court asked him, is this a tactical decision? And defense counsel, sounding surprised at the record, says, if I made an error, I made an error. Well, we know he made an error. Without that foundationless testimony from the lab and the officers, there's no case. The State says, well, we could have cured any foundation or chain problems at trial. A response to that is briefly threefold. Why could they? There's no indication that any rigorous evidence control, labeling, or auditable procedures took place here. This wasn't a rigorous prosecution where somebody forgot to dot an I on one piece of evidence. If a reliable chain of evidence had been shown for some, but not all of the evidence, maybe we'd give them the benefit of the doubt that they cured this. But there was no evidence, and it's not a credible position. If the lack of chain of foundation, the second issue, can never be reviewed because defense counsel failed to notice and preserve it, this is a problem of repeat. Defendants will never have recourse. We aren't advocating for getting rid of the forfeiture rule. There may be times when defense counsel does not want to get into every single issue at trial. But we have defense counsel admitting on the record to negligence. As we do in this rare case, this court has to be able to review the issue. Well, what if the claim is he didn't pursue the matter of the chain of custody sufficiently? What are we supposed to do with that? Had he done it and made an objection and pursued it at trial, the state very well could have took point in its case and addressed it. By the way, had he not done it, I don't know if this is an argument to be made, but given the particular prosecutor and the malfeasance we've already talked about, this might have been a good argument to make to the jury. Ladies and gentlemen, what happened to this stuff? But the last part is, how can we find this to be ineffective assistance of counsel on direct appeal when we have no idea that, in fact, there was a problem with the chain of custody? We can't reverse conviction on the speculation that, gee, maybe if that objection had been made, there wouldn't have been a change shown because had an objection been made, it might have, in fact, been corrected. So how are we supposed to reverse? Well, as I learned, the burden is on the state to make a prima facie case as to the reliability of these evidence in the foundational first place. It only shifts to the defendant if there's some kind of, after they've done that, then the defendant has to show that they're okay with it. No prima facie case is ever demonstrated here regarding the reliability of these evidence. Again, if they had... So you're arguing that the evidence is insufficient to sustain a conviction? It absolutely is insufficient. But how can you argue that it's ineffective assistance of counsel? Where's the prejudice? That's entirely speculative, isn't that? Your Honor, I certainly understand the feeling that there may be a speculative issue here. However, if there had been any foundation, any chain, if some of the evidence had been done correctly, we can look at it and say, well, maybe they would have been able to, maybe they wouldn't have been able to. In a case like this where it's on their burden to present a prima facie case and they don't do it for a single exhibit, then we don't have to think maybe they could have, maybe they couldn't have. There's no evidence that could have presented a prima facie case. The prejudice, you know, the key to prejudice is... Your Honor, I'm drawing a distinction here. On the one hand, sufficiency of the evidence and whether or not the evidence as presented was sufficient to prove this charge beyond a reasonable doubt, we can consider sufficiency of this claim all the time. But you're raising an ineffective assistance claim, are you not? We are raising that, yes. The ineffective assistance claim, we have to be able to conclude, you have to be able to convince us that there is prejudice to the defendant here. So if we were to conclude that the prima facie case was made, by way of assuming hypothetically, on what basis could we possibly conclude that there was ineffective assistance of counsel? Well, first, I don't believe we can conclude... You see, that's why I said it as it is. I understand. Assumption, you know, assuming that we find the first, how could we possibly find the second? It would be difficult to find the second. Again, you know, prejudice, it was clear that some prejudice exists where there's a probability sufficient to undermine confidence in the outcome, right? What probability is there that if an objection had been made that the evidence would show that there was a gap that couldn't be met with regard to the chain of custody? We're looking, I mean, we're looking at... I would say, I would reverse that argument, that there's no probability demonstrated that they would have been able to demonstrate any kind of strategic change. But you're burning to demonstrate prejudice, isn't that? If I were to demonstrate prejudice... Not the possibility that maybe they wouldn't be able to do it. Is that enough? A probability sufficient to undermine confidence in the outcome. What is that based upon? That probability is based on the complete lack of any... The lack of any chain established for any particular exhibit. If they had gotten one exhibit through the proper chain, I would agree there's evidence to suggest they could have done it, they could have fixed it, and therefore the probabilities fall against me. In this case, there's nothing to establish a baseline that they could have cured these things. Therefore, the probable result of objecting to these things would have been to keep them out, because, as I said, there's no evidence to suggest they could have cured it. By not requiring the state to establish a chain of custody foundation for its evidence, defense counsels are reasonably efficient. Tomorrow's prejudice might be fished in performance by the admission of testimony, evidence, and establishment of conviction. Your time's up, Mr. Waller. You'll have an opportunity to address us again in rebuttal. Thank you. Okay, Mr. Landry. Good afternoon, Your Honor. May I please record, counsel? Yes, the state will concede that this case is not a textbook example of how one might try a case. Unfortunately... Generous concession. It's all too common. Prosecutors and attorneys of various degrees of sophistication have prosecutions of this nature throughout the state. So I think that the focus of the court... I have a question here about also the trial court. How... Assuming for the moment that it was... the testimony of the defendant was properly admitted, that the trial court properly denied the motion to suppress, how in the world is the defendant's invocation... incomplete invocation of his right to remain silent, which is the best we can say, it wasn't an unequivocal one, or his later invocation of his right to counsel, how is that ever admissible? And what's going on here? The prosecutor asks this in a leading question to listen from the cops who appear from the record not to want to say this because they're a damn sight smarter, it looks like, than the prosecutor. And the trial judge is sitting there with me. He's the potted plant listening to all this stuff. What's going on here? Well, Judge, you know, my speculation is probably not that everything's wrong. I'd be happy to hear it. I think we have a young prosecutor who's trying to do his best to be complete, and he probably believes that bringing out this testimony adds credibility to the admission. I don't know. An entirely reasonable summation, but this is Champaign County, my home turf, and the prosecutor had been at it for almost ten years. I don't know the prosecutor, Judge. It reminds me of the story of six months experience, 20 times over. But go ahead, I digress. Well, you know, I can only guess that he's attempting to be complete in this examination, and he's overlooking the potential prejudices and questions. And, you know, I don't think it would have been a personal error. It shouldn't have been asked, probably not. Wouldn't the judge have cured anything by interjecting himself and bringing attention to the issue? I can argue that by just saying nothing and letting it go, it probably was less harmful than everyone's attention. Given the serious consequences Mr. Roller pointed out of the business of this park, why shouldn't we be looking around to try to accept this testimony? I mean, this is something. Would you agree this development's got to prove the unreasonable doubt? Yes. Okay. So, we have, what is the name of the park? Weaver. Weaver Park. Let me see. It would take, call the head of the park district, say, are you familiar with the park properties? Yes. Weaver Park, one of them? Yes. How long that take? And then, how about, instead of a guesstimate, the guy just gets one of these things that construction people use and walk it, and say, yeah, he walked it, it's 537 feet, or whatever it was. The use of the term guesstimate is just probably a torturous word to put it all, sir. I think what he meant to say is he estimated that when he gets home. Why shouldn't this, when he's eyeballing it, how is that ever going to be adequate? Well, you know, he said it was 300 feet, given that it has to be within 1,000. I mean, it's relatively not a close call. You know, the distance between you and I could be 10 feet, it could be 9, it could be 12, but if the law requires it to be within 50, it's not really in controversy. And I think that's what the officers think. Well, you have to prove it beyond a reasonable doubt. I'm not going to take measure and say, you know, here's the evidence, and satisfy it to the jury. I suppose the question is, why, as we are dealing with this, should we deem this acceptable? And I suppose part of the problem is, Mr. Londrigan, I personally have been involved in several cases on the same point within the last 18 months. And I'm astonished that the prosecutors have failed to garner this minimal evidence. Was this a school? Was this a park? This is the distance between point A and point B, and they just let it go. It's a concern for the state of the field, Your Honor. I mean, I think the problem somewhat lies in the common knowledge of the community and the prosecutor's assumption that all of us understand the park to be what all of us understand it to be. I'm familiar more with Springfield than I am with Champaign. And if someone were to say, you know, this was within 300 feet of Washington Park or Lincoln Park or Idaho Park, there would be no question in my mind that they were referring to a public park. Yeah, but these are not elements that, in your normal conversation, need to be proved beyond a reasonable doubt, both as to the distance and the nature of the facility. I think when you suggest proving beyond a reasonable doubt, it's up to the jury to decide which reasonable or not. I think the focus is more on what is the establishment of a primal case. And I think if there's some evidence of the element of the offense, some, then I think that the state has established a primal case and is now on the defendant if he feels that the evidence is lacking or the state has failed to make its case to at least suggest that this is an issue that the defendant is concerned about. You said it wasn't even a park. You used the word park. General knowledge of what everybody understands a park to be. It's a public place where people go. How about the trailer park, the Weaver trailer park? Look, he said trailer park, and I think that's a distinction, but he didn't. He said Weaver Park, and I think that's sufficient enough to raise in everybody's mind that we're talking about a public park. If someone has an issue with that, I think it's incumbent upon the defendant at that point to say, hey, this is really a park. You call it a park, but it's really a park. And so there has to be a point at which the problem or the issue that's being contested is brought to the forefront and an opportunity for the state to cure the defect that the defendant feels is there. Well, counsel, isn't it true there is such things as a private park versus a public park? Judge, I'd have to concede that there probably is, but I don't know of one. And if there was a private park, you know, I don't know, what does that mean? Somebody owns the ground that they have now named it Weaver Park? I don't know. You do acknowledge, though, that the state did not ask the simple question, is Weaver Park a public park? That's correct, Your Honor. Okay. What I'm saying is, you know, when you're involved in a trial of whatever degree of confusion or, you have a lot going on in your mind. And I can understand that this is something that's going to occur repeatedly in the future. And from the state's standpoint, what you're trying to avoid is creating any unnecessary landmines out there to take advantage of the fact that there's something in oversight. I understand the state has a burden to establish its case. I think every state's attorney understands that. But when things like Weaver Park being a park, you know, and we haven't gotten into what's its use and how many basketball courts are on it, you know, there's common knowledge and people just forget. And I think instead of defeating the entire case, it ought to be incumbent on the defendant to say, Well, you haven't established that that's a public park. If he honestly thinks that Weaver Park is a private park or a trailer park or something other than a public park, then it now gives the state the opportunity to hear what people think. And all of us are now guessing about your appeal. And I think that plays consistently throughout Issue 2 and 3 of this appeal. At what point does the state establish a private case? Has it done a very good job of laying out everything and tying it all up? Probably not. But, you know, the rule of forfeiture is there for a reason. And it is to allow the state to draw its attention to deficiencies which may exist to correct it. Now we don't have that opportunity. All right. Let's forget the park for a second. Mr. Waller began by using a hypothetical situation. Somebody goes into a restaurant or wherever he sat and says, I don't think I want lettuce on my cheeseburger. Does the guy who said that want lettuce on his cheeseburger? I think it raises the question whether he does or doesn't. I think the term I think in general colloquialism here in this part of the country is synonymous with I'm not sure. So when he says, I don't think I want lettuce on my cheeseburger, which he says that, they're not sure. They're not sure. Where'd you put your car keys? I think I left them on the counter. Are you sure you left them on the counter? No. You think you left them on the counter. Did you mow the grass? Yeah, I did. People usually don't say, no, I don't think I mowed the grass. How about do you want to mow the grass? And you ask me, do you want to mow the grass? And I say, I think not. Do you think I want to mow the grass? Well, he didn't say that. He said, I don't think. And I honestly feel in common parlance that means I'm not sure. I mean, that's the way the trial judge took it. Whenever you say, I don't think I want, or I don't think, you're saying I don't think, I know, but my knee-jerk reaction right now is to feel this way, or to suspect that I left my keys on the counter, or something of that nature. So I think the trial judge was appropriate there. I think the defendant needs to be quite clear what he's doing. If he's raising his option not to speak any further to the police, he needs to say so unequivocally. That's the law. He didn't do so in this instance. Anything else? If there's no other questions, we're adjourned. Okay. Thank you, counsel. Mr. Waller and Eric Buttelson? I mean, very briefly. Before I do that, I want to ask a follow-up on Justice Stern's question. In the event that this is ambiguous, or at least not an unequivocal invocation of his right to remain silent, in the eyes of what's in the cops, are they required to seek clarification? Well, at a motions press hearing, it's certainly the burden of the state to show that the statements were voluntary and not taken against them. I'm just focusing on the whole business of the question of, is this an unequivocal invocation of the right to remain silent? You just heard the last discussion. But going back to the time that the conversation occurs, and he's given his right to say, I don't think I want to say anything. Are the cops legally required to pursue that to say, what do you mean by that? I don't think so, Your Honor. And the reason is, the case law has found those type of, quote-unquote, things that can be characterized later as a clarification, as to be improper. I don't think I want to talk to you anymore sufficiently unequivocal that it doesn't require clarification. In another case where the person said, I don't want to talk to you, and they said, you don't want to talk about that other thing we mentioned? And then he did. The courts have found that that type of follow-up is not appropriate. I don't think it would have been appropriate in this case, either. I think, just as similar to the case where they put stands over heads and shakes his head no, that's just as unequivocal as, I don't think I want to talk to you anymore. The opposing counsel tried a couple of different scenarios, such as, I don't think I know where I left my keys. We can use I don't think in a lot of different ways. There's a difference between asking me about a fact, which I may or may not know, and asking me about my credits. Do you want lettuce? I don't think I want lettuce. Do you want a birth date? I don't think I want a birth date. Do you have your keys? I don't think I know where my keys are. It's a completely different inquiry. It's a completely different usage of I don't think against me, or a question of a fact that I don't acknowledge in my preference, in how I state my preference. Regarding the issue, I'm sorry, then I'd like to touch on the public park very briefly. I mean, in counsel's brief, he indicates that there's case law that defines a public park as a piece of ground in a city or village set apart to ornament or to afford the benefit of air, exercise, or amusement. There's no definition of statute in this case law, in the sense that the state needs to be able to approve those type of things. We don't need to call in the director of public works or the parks department to come and testify to that. You can ask the officer, and I'll concede to the general geographic knowledge is good enough for an officer to say, I know it's a public park because there's no fence around it. There's basketball hoops and picnic tables. Or, I know it's a public park because I patrol it every day, and therefore, here is some basis for which I can make that statement. That minimal amount would have been enough if it wasn't given here. I don't think, I certainly know people who can't estimate the difference between 1,000 and 300 feet, 1,000 feet. I certainly know people who can't estimate the difference between 1,000 and 300 feet, 1,000 feet. His saying, I estimate that without any kind of training, like we require officers to do in pacing a vehicle, or anything like that, without any kind of basis for that is insufficient. Any other questions? Okay, thank you, counsel. Thank you. I advise you to be in recess for a few moments.